Smithee v. Campbell, Land Commissioner.

---

## SMITHEE v. CAMPBELL, LAND COM'R.

LEGISLATURE: *Passage of bills :   The levee act of 1869.*

A bill passed the house of representatives and was sent to the senate, where it was amended and returned to the house.  The house

rejected the amendment and returned the bill to the senate. The senate receded from the amendment and returned the bill again to the house. It was then enrolled and signed by the officers of both houses and approved by the governor with the amendment still remaining.

HELD: That the bill as enrolled and approved by the governor was not passed, and the act was void.

(This was the "Act providing for the building and repairing of the public levees of the State and for other purposes," approved March 16, 1869.—Rep.)

APPEAL from *Pulaski* circuit court.

Hon. J. W. MARTIN, Circuit Judge.

*U. M. & G. B. Rose* and *R. A. Howard,* for appellant.

1. The act of March 16, 1869, was constitutionally passed.  *15 Kansas, 195; 10 Nevada, 250; 32 Ark., 516.*

Even if the amendment to the bill was not passed, all the other provisions were and could be easily carried into effect without reference to it.   When part of an act is unconstitutional and void, and a part good which may be separated from it, the rule is that the good shall be binding. *2 S. C. N. S., 150; 43 Ala., 721; 34 Ark., 263; 16 Mich., 254; 77 Ill., 11; 103 W. S., 683; 35 Ark., 60; 14 Wis., 295; 32 Mich., 369; 29 Iowa, 356; 2 Blackf., 10; 49 Cal., 117; 3 English, 436; 38 Cal., 572; 9 Wheat., 388; 3 Ark., 285; 11 Ib., 44;* see also *Chicot Co. v. Davies, 40 Ark.,* and *Sedgwick Const. and Stat. Law, 252.*

*C. B. Moore,* attorney general for the State.

1. The act was void.  *Sec. 6, Art. X, Const. 1868.*

2. The bill as approved by the governor was never passed by the two houses of the legislature.   Nor is there any record of its ever having been read the first or second time.  *Sec. 21, Art. V. Const. 1868; 2 S. C. N. S., 150; 42 Md., 203; 50 Miss., 68; 43 Ala., 721.*

EAKIN, J. The appellant applied to the circuit court of Pulaski county for a mandamus to compel the State land commissioner to receive in payment for certain swamp lands, subject to sale, an auditor's warrant for $500 with 8 per cent. coupons, issued under the act of March 16, 1869. The commissioner answered, denying the validity of the act upon two grounds—first, submitting that it was unconstitutional in its matter; and second, that it had never actually passed as it had been approved by the governor. He submitted further that the coupons were not receivable for lands, if the warrant was.

The court properly treated the answer, which presented matter of law alone, as a demurrer to the petition. It is the duty of the courts to know the law, statutory as well as unwritten, and they may resort, of their own motion, to any means of information which may solve their doubts as to what is law and what is not. Allegations of facts which show that a law never was passed are simply argumentative, and suggestive. It is the same as to say there is no such law. Such facts need not be shown as evidence, but may be shown to the court in aid of its judgment.

The writ was denied, and the petitioner appeals.

If the act be unconstitutional, any further inquiry would be useless. It is therefore most convenient to dispose of that point first. The clause of the constitution of 1868, which is suggested as inhibiting the act, is found in *sec. 6 of Art. X*, as follows: "The credit of the State or counties shall never be loaned for any purpose without the consent of the people thereof, expressed through the ballot box."

The act in question recites the congressional grant to the State, of all its swamp and overflow lands to be applied exclusively, as far as necessary, to the purpose of reclaiming said lands; and that the legislature of the State had enacted laws for their reclamation by levees and drains. Further,

that a large portion of said lands yet remained in the hands of the State, which had not been sold or disposed of under previous acts, and which in their present condition, unless redeemed and protected from overflow, would be worthless to the State. Further, that at the outbreak of the war, all works on the public levees of the State had been suspended, and the levees previously built had not been kept up and repaired, whereby a vast amount of the lands were of no practical value, unless the works on the levees should be carried on and completed.

The act then proceeds to prescribe a mode for the continuation of the work of reclamation. Its general features are as follows: Whenever a majority of the land owners in any locality which would be directly benefited by the building or repairing of any levee, or the ditching or draining of any overflowed lands, might, through the county commissioner of internal improvements apply to the State commissioner of public works to have it done, the latter officer was then authorized to cause surveys and estimates to be made, and empowered to proceed with the work or not, as he might consider it expedient, and with a view to the best interests of the State or individuals. Detailed provisions were made for the conduct of the work, and the contractors were to be paid by warrants, of which the one now offered was one properly issued if the law be valid. It was made receivable in payment for swamp and overflowed lands. Such, omitting details not affecting any question here, was the general scope and purpose of the act. It was provided that the interest becoming due on the warrants should be levied upon and collected from the owners of the land benefited by the work, according to the list to be made out by the commissioner of public works, and certified to the counties to be extended on the tax books for collection.

Obviously there was no loan of the State credit to any person or body corporate. The State made herself prima-

rily liable for work which she considered it her duty and her interest to have done, and became responsible for nobody's fulfillment of an obligation. It was for her own reimbursement that she provided the attempted tax. The holders of the warrants did not look to it. Whatever the constitutional objections may be in the act itself, or any of its provisions, it is certainly not amenable to that of being a loan of credit; unless we can say that any public enterprise of the State must be considered a loan of credit, if it involves payment of contractors in the future, and its benefits incidentally inure partly to some individuals.

We proceed to examine if the act was ever passed. In aid of this we look to the journals of the two houses, which the constitution requires to be kept and published. *Art. V, sec. 12.* This was done in *Smithee v. Garth, 33 Ark., 17.* <sub>LEGISLA-TURE. Passage of bills.</sub>

This court has declined to adopt the doctrine prevailing in England and some of the American States that the enrolled bills are conclusive. In the act as enrolled and printed there appears this clause: "And a sufficient amount of money is hereby appropriated to carry into effect the provisions of this act, such amount not to exceed twenty-five hundred dollars per annum."

The journals show that the bill originally passed the house without this clause; that it was amended in the senate by adding the clause; that it was returned to the house as amended; that the house refused to concur in the amendment, and so notified the senate; that the senate receded from the amendment, and returned the bill again to the house; that it was then enrolled and signed by the officers of the two houses, and approved by the governor, with the amendment still remaining, and is now on file in the office of the secretary of State.

The constitution (*Art. VI, sec. 15*) provided that every bill "before it becomes a law" shall be presented to the governor for his approval.

---

The bill as approved by the governor, printed and enrolled, was never passed by the house of representatives at all. It was once passed by the senate, but that body retracted, and for the purposes of this case may be considered to have adopted the bill as passed by the house; although it did not formally repass it after it had receded from its amendment. As to the propriety of this parliamentary practice, we waive any question, as it is not here important. If we concede that the assent of both houses was formally and constitutionally given to *a* bill, it was a bill without this clause, and that bill was never approved: We cannot say that the amendment was unimportant, for it had been a cause of difference between the two houses. We cannot say the governor would have approved the bill without the provisions for the expenses of its execution.

The journals upon this point are so plain and direct as to leave no room for inference or presumption. We could not possibly reach the conclusion that something might have been done and omitted from the journals, which, if entered, would show that the bill had been finally passed by both houses as it was signed by the governor. The difference being substantial it needs no authority to show that, failing to receive the governor's sanction, the bill as passed never became a law.

The warrant was void.

Affirm.