## POWELL *v.* HAYS.

Opinion delivered July 1, 1907.

1. SUPREME COURT—ORIGINAL JURISDICTION.—The Supreme Court has original jurisdiction, by mandamus, to compel a circuit judge to hold a term of court required by law. (Page 455.)

2. STATUTE—APPROVAL OF BILL BY GOVERNOR.—When the Governor signs a bill with the intent of approving it in the manner provided by the Constitution to make it effective, it becomes the law, and his approval can not be revoked by him or his successor, though the bill remains in the Governor's office, and the time fixed by the Constitution for acting upon the bill has not expired. (Page 458.)

3. SAME—JUDICIAL NOTICE.—Whenever a question arises in a court of law of the existence of a statute, or of the time when a statute took effect, or of the precise terms of a statute, the judges who are called upon to decide it have a right to resort to any source of information which in its nature is capable of conveying to the judicial mind a clear and satisfactory answer to such question; always seeking first for that which in its nature is most appropriate, unless the positive law has enacted a different rule. (Page 465.)

4.  SAME—EVIDENCE OF APPROVAL.—Where, after a bill was approved on
    a certain day by the Acting Governor, his approval and signature
    were on the following day erased by his successor in office, who
    undertook to veto the bill and issued a proclamation reciting that his
    predecessor had approved and signed the bill, the fact of such ap-
    proval and signature may be proved both by the proclamation and by
    the bill showing upon its face the erasure of the approval. (Page 467.)

Original petition for mandamus; denied.

H. S. Powell filed a petition for mandamus in this court
against Hon. George W. Hays, judge of the thirteenth judicial
district, alleging "that the plaintiff is the duly elected, qualified
and acting prosecuting attorney within and for the thirteenth
district of the State of Arkansas, and the defendant is the duly
elected, qualified and acting circuit judge of said district. That
there are numerous persons now confined in the jail of Lafayette
County awaiting trial upon various charges of crimes and felo-
nies, and the defendant, as prosecuting attorney aforesaid, is in-
terested in providing said persons with the speedy and public
trial guarantied by the Constitution, and is likewise interested in
exonerating the county of Lafayette and the citizens thereof
from the expense of maintaining such persons so held to answer
the charges as aforesaid in so far as the same may be done con-
sistently with the due administration of justice. That for various
other obvious reasons it is important and essential to the due
administration of justice, not only in so far as the same involves
persons charged with the commission of offenses against the
law, but as the same relates to the rights of private per-
sons having causes of action pending therein as litigants,
that said court shall be held at the time fixed for the July term
thereof. That the defendant, Hon. George W. Hays, has duly
and formally notified C. C. DuBose, Esq., clerk of the said cir-
cuit court, * * * that he will decline to hold the July term
of the circuit court of said county of Lafayette, and assigns as
his reason for said refusal that in his opinion the said county has
been transferred to the eighth judicial circuit by virtue of the
provisions of the law which took effect and became operative on
the 14th day of May, 1907; that the circumstances which, in
the opinion of said judge, warrant him in taking the action in-
dicated as aforesaid are as follows; viz.: A bill was passed in,

the respective houses of the Arkansas General Assembly and in due course reached the Governor on the 14th day of May, 1907; that the then Acting Governor, Hon. John I. Moore, affixed his signature to said bill with the intent and for the purpose of approving the same in the manner provided by the Constitution to make said bill effective as law; that the said bill, with the said Acting Governor's signature indorsed thereon, was not returned to the house in which it originated, nor was the same lodged in the office of the Secretary of State, but remained in the Governor's office and in possession of the Executive; that at twelve o'clock M. on said day Hon. X. O. Pindall was by the Senate of Arkansas elected President thereof and duly qualified as such, and thereupon the said General Assembly adjourned *sine die*. That, in consequence of the continued disability of the Governor of the State, the said Pindall immediately after the said adjournment was inducted into the office of Governor in substitution of the said Moore, and thereupon took upon himself and proceeded to discharge for the time being the several duties of the said office of Governor; that on the morning of the 15th day of May, 1907, finding said bill, so signed as aforesaid, still in the Governor's office, and, deeming the same to be under his control, and being unwilling to permit the same to become a law, [he] rescinded the action of his immediate predecessor, and withheld executive approval thereof, and announced his reasons therefor in a veto message, which was duly lodged in the office of the Secretary of State and properly proclaimed. That under this condition of fact the defendant, as judge of the thirteenth district aforesaid, maintains that, upon the approval of said bill by the said Acting Governor Moore, the same finally and effectually, to all intents and purposes, became and is the law, not subject to be vetoed, canceled or recalled by said Acting Governor Moore, who signed it, or any successor of his. The plaintiff maintains that the act of signing by Moore did not become operative so as to invest the said bill with the qualities of a law until the same had been returned to the house in which it originated if signed during the session or had passed out of the possession of the Governor by being lodged with the Secretary of State, the final custodian of the written laws of the State; that, in consequence of this conflict of opinion, uncertainty and

confusion have arisen, and is being intensified by the attitude of the defendant judge.

"Wherefore plaintiff prays that a writ of mandamus may be issued, directed to the Hon. George W. Hays, judge as aforesaid, commanding him to proceed to hold the circuit court of said county of Lafayette at the time and place prescribed by law before and at the time of the said alleged enactment of the act mentioned and described herein, and for all other proper relief."

Respondent answered as follows: "It is true, as stated in the petition that he was duly elected, qualified, and is now acting judge of the thirteenth judicial circuit of said State, in which was situated the county of Lafayette prior to the passage of an act entitled, "An act to re-district the eighth and thirteenth judicial circuits of Arkansas and other purposes," approved May 14, 1907. It is likewise true that respondent has duly and formally notified the clerk of the circuit court of said county in a written communication, a correct copy of which is attached to said petition, that he would not open or hold a session of the circuit court of said county for the approaching July term thereof, on the grounds set out in the aforesaid communication.

"And, further answering, respondent says he is advised that, by virtue of the provisions of the aforesaid act of the General Assembly of said State, the county of Lafayette was transferred from the thirteenth to the eighth judicial circuit of said State. Respondent no longer has authority or jurisdiction to hold the circuit court for said county; and in that behalf he is advised and avers upon information that said act, being Senate Bill No. 449, passed both houses of the General Assembly and was transmitted to the Governor on ____ day of May, 1907, and on the 14th day of said month the acting Governor of the State, the Hon. John Ike Moore, indorsed his approval in writing on said enactment, signed the same, and directed the Governor's private secretary to deliver it to the Secretary of State, the law making it the duty of that official to have said enactment printed with and as a part of the acts of the Legislature. On the same day the Hon. X. O. Pindall was elected President of the Senate, and the General Assembly adjourned *sine die*. And thereupon the Hon. John Ike Moore ceased to act as Governor, and was succeeded by the Hon. X. O.

Pindall as Acting Governor. That the action of the Acting Governor in approving said act was and was intended to be final, and he vacated said office understanding and believing that his action was final and irrevocable. It is true that his successor, Hon. X. O. Pindall, did on the day succeeding that upon which he qualified as Governor, as stated in said petition, attempt to veto said act in the manner set out in said petition, but whether it is true as alleged that he found said bill still in the Governor's office, or that the same had been delivered by the Governor's private secretary to the Secretary of State according to the directions given the secretary by the Governor, respondent has no knowledge or information sufficient to form a belief, and he therefore denies said allegations. But respondent, being of the opinion that said act became a law upon the approval thereof by the Acting Governor, John Ike Moore, and that it was not competent for the Hon. X. O. Pindall as his successor to recall said approval and exercise the veto power with reference to said bill, did not and does not feel that he is authorized or would be justified in treating Lafayette County as a part of the thirteenth judicial circuit, or undertaking to hold the circuit court of said county. Respondent has no interest whatever in the matter, other than to discharge his duty as the judge of the thirteenth circuit, and submits the aforesaid matters and things for the judgment and determination of this Honorable Court."

The testimony of John Ike Moore was to the effect that on May 14, 1907, while Acting Governor he signed Senate Bill No. 449, the bill in question, before eleven o'clock, and that he delivered the bill to Mr. Paul Little, the Governor's private secretary, with the direction that he deliver it to the Secretary of State. Mr. Little testified that the bill in question was handed to him by Governor Moore on May 14, 1907, with instructions to deliver it to the Secretary of State; that in due course it should have been delivered to the Secretary of State, but by some oversight it was not transmitted to the Secretary of State in accordance with Governor Moore's instructions, and that it was in the Governor's office when Governor Pindall took charge of the office.

X. O. Pindall, who succeeded John Ike Moore as Acting

Governor at noon on May 14, 1907, testified that he found Senate Bill No. 449 in the Governor's office on May 15, 1907, that he erased Governor Moore's approval and signature, and issued a veto proclamation, and thereupon transmitted the bill with the following proclamation to the Secretary of State:

"KNOW. ALL MEN BY THESE PRESENTS:

"By virtue of the authority vested in me by the Constitution and laws of the State of Arkansas, I hereby make proclamation of the fact that I have declined to approve, and have on the 15th day of May, 1907, vetoed, Senate Bill No. 449 by Mr. Montgomery, being entitled "An Act to redistrict the 8th and 13th Judicial Districts of Arkansas, and for other purposes," for the following reasons:

"The present status of the lines dividing the various judicial circuits of Arkansas is such that any disturbance of one of them necessarily affects the districts adjoining, and thereby causes disturbed conditions among the people of the districts affected. Citizens, jurors and witnesses become accustomed to the conditions of their judicial affairs, and when the customs are established they are slow to want a change regarding them. They become acquainted with their judges, prosecuting attorneys and their other court officers, and for these reasons do not look with favor upon disturbed conditions. I am sufficiently advised and believe that there is no necessity for the disturbance of conditions as they at present exist. The representatives and senators from a majority of the counties affected by this bill are opposed to its passage, and from these gentlemen, as well as from one of the circuit judges of the districts, I find these facts, and therefore veto this measure.

"This bill I found in the possession of the Governor's office when I assumed the duties of Governor, and that it has already been signed by my predecessor in office, the five days allowed for the Governor's consideration not having expired, and feeling that justice demands that, as Governor, I exercise my discretion in the matter, I hand the bill to you without my signature. In testimony whereof, I have hereunto set my hand and caused the Great Seal of State to be affixed at Little Rock, this 15th day of May, 1907.

"X. O. PINDALL,

"Acting Governor."

*H. S. Powell,* for petitioner.

The records show this bill was vetoed, and the filing with the Secretary of State within the time prescribed by law makes a complete and unimpeachable record. Parol evidence is not competent to explain the erasure. Art. 6. sec. 15, Const. This court takes judicial notice of the records of the acts of the Governor as filed with the Secretary of State. Art. 6, § 21, Const.

The question here is not presented in *Marbury* v. *Madison,* 5 U. S. 137, 1. Cranch. In that case *all* was done by the President that was in his power to do. The General Assembly may reconsider. and retract its action; why can not the Governor, a co-ordinate branch of the Government, while the matter is yet in his department and within the term prescribed by the Constitution? The Governor has this privilege. 210 Ill. 488, 71 N. E. 602; and the Hatch Case, 19 Ill. See also 144 U. S. 1, 36 Law. Ed. 321, where the rule is announced: "When a law is found in the Secretary of State's office, properly authenticated, and the journals  *  *  *  show that a majority of its members were present when the bill was passed, and that the presence of a quorum was determined in accordance with a valid rule of the House, and that a majority of that quorum voted in favor of the bill, it legally passed the house, and the law is beyond challenge."

When the forms prescribed by the Constitution for the authentication of laws are complied with, and the records are complete, they are the most appropriate evidence, and there is no other evidence of sufficient might to contradict, or impeach it. 162 U. S. 547, 40 Law. Ed. 1069; 153 U. S. 663.

Owing to certain provisions of our Constitution the rule announced in *Field* v. *Clark,* 143 U. S. 649, is not followed in this State. Our Constitution requires certain things to be affirmatively shown, and the courts look beyond the enrolled act to the journals. 19 Ark. 250; 27 *Id.* 278; 32 *Id.* 515; 35 *Id.* 17; 44 *Id.* 336; 51 *Id.* 566; 41 *Id.* 471; 49 *Id.* 325; 51 *Id.* 566; 72 *Id.* 565. The existence of an act is tried by the record, and this legislative rule applies to the Executive. Parol testimony is incompetent.

The acts of Governor Moore and Governor Pindall were both the acts of the Governor, and not of the individual. In

re *Depuy,* Fed. Cases, No. 3814, 3 Benedict, 307. As to the power of the 'Governor over a pardon before delivery, see 65 Ark. 485.

*T. D. Crawford, Murphy, Coleman & Lewis* and *Moore, Smith & Moore,* for respondents.

1. Evidence was competent to show that the bill was appoved by Governor Moore, that his approval was erased by his successor, and an attempt made to veto the bill. Both parties are concluded by the pleadings in this case. The petition alleges all the facts, and they are admitted in the answer. 19 Ill. 285.

2. Parol evidence was competent to show the directions given by Governor Moore, to his private secretary to convey the act to the Secretary of State, and the cause of the failure to do so. 60 Atl. 99.

The law does not require the Governor to keep a record of acts done by him. He is simply required to sign the bill, if he approved it. Art. 21, § 6, Const., requires the Secretary of State to keep a record of the official acts and proceedings of the Governor. The attempt here is not to impeach a record, but to show what was done, and which did not appear of record. Governor Pindall had no authority to erase the signature of Governor Moore. When he did so, he was not acting officially.

3. The bill became a law when the Governor signed it with the intention of approving it. 72 Ark. 249, 250; 71 *Id.* 534-6; 1 Cranch, 137; 1 Ark. 585, 586, 588; 6 Wall. 499; 103 U. S. 424.

Statutes take effect from the date of the Governor's approval. 2 Story, 571; 9 N. Y. Supp. 389; 6 Gray, 316; 22 La. Ann. 545.

4. A succeeding Governor has no power to revise, reverse or annul the act of his predecessor in approving a bill. Review the Illinois Cases, 19 Ill. 285, 110 Ill. 492; 161 *Id.* 262, and the Kansas Case, 35 Kans. 271. See 29 Ct. Cl. 225; 21 *Id.* 262; 23 *Id.* 123; 3 Story, 744; 12 Wheat. 19; 22 L. R. A. 719, 720; 6 Pet. 729-30.

HILL, C. J. The prosecuting attorney of the thirteenth judicial circuit invokes the supervisory jurisdiction of this court by filing herein a petition for mandamus, in which he alleges that the circuit judge of his circuit has declined to hold a term

of the Lafayette Circuit Court which is fixed by law to begin on the 4th Monday in July, and prays that the circuit judge be commanded to hold said July term of the Lafayette Circuit Court. Precedents for this exercise of the supervisory jurisdiction of this court are found in *Parker* v. *Sanders,* 46 Ark. 229, and *Waterman* v. *Hawkins,* 75 Ark. 120.

The judge has responded to the petition, admitting the facts alleged, and taking issue as to his authority to hold the circuit court of Lafayette County.

The determination of this issue involves the validity of a veto by the Acting Governor on May 15, 1907, of a bill passed by the General Assembly and signed by the then Acting Governor on May 14th, which bill transferred Lafayette County from the thirteenth to the eighth judicial circuit, and changed the time of its terms of court.

The respondent, desiring to have developed all the facts relating to the signing of the bill on the 14th and its veto on the 15th, asked the court to hear testimony. The court appointed a commissioner to take testimony, and the testimony of Hon. John I. Moore, who was Acting Governor on the 14th of May, and of Hon. X. O. Pindall, who was Acting Governor on the 15th of May, and of Mr. Paul Little, private secretary to the Governor, was taken, and the veto message and proclamation, and records of the Secretary of State relating to the bill, were introduced.

The petition and response and a summary of the evidence will be stated by the Reporter. For the purpose of this opinion, it is sufficient to say:

Owing to the absence and illness of Governor Little since January, 1907, the President of the Senate has exercised the powers of Governor.

The General Assembly adjourned at noon on May 14, 1907. Under section 12, art. 6 of the Constitution, the powers of the Governor were for several months, and until that adjournment, being exercised by Hon. John I. Moore, President of the Senate. His term as senator expiring at the next election, pursuant to section 17, art. 5, of the Constitution, another President was elected. Shortly before noon on the 14th, Hon. X. O. Pindall

was elected President of the Senate, and assumed the powers of Governor at noon, Governor Moore then retiring; the adjournment of the General Assembly being the time when one ceased to act and the other began acting as Governor.

The petition of the prosecuting attorney alleged that the circuit judge has notified the circuit clerk of Lafayette County, in a communication attached to the petition, that he declines to hold the July term of said court, and assigns as his reason for said refusal that in his opinion Lafayette County has been transferred to the eighth judicial circuit, and the petitioner alleges "that the circumstances which, in the opinion of said judge, warrant him in taking the action indicated as. aforesaid are as follows, viz: A bill was passed in the respective houses of the Arkansas General Assembly, and in due course· reached the Governor on the 14th day of May, 1907; that the then Acting Governor, Hon. John I. Moore, affixed his signature to said bill with the intent and for the purpose of approving the same in the manner provided by the Constitution to make said bill effective as law; that the said bill, with the said Acting Governor's signature indorsed thereon, was not returned to the house in which it originated, nor was the same lodged in the office of the Secretary of State, but remained in the Governor's office and in possession of the Executive; that at twelve o'clock M. on said day Hon. X. O. Pindall was by the Senate of Arkansas elected President thereof and duly qualified as such, and thereupon the said General Assembly adjourned *sine die*. That, in consequence of the continued disability of the Governor of the State, the said Pindall immediately after the said adjournment was inducted into the office of the Governor, in substitution of the said Moore, and thereupon took upon himself and proceeded to discharge for the time being the several duties of the said office of Governor; that on the morning of the 15th day of May, 1907, finding said bill, so signed as aforesaid, still in the Governor's office, and deeming the same to be under his control, and being unwilling to permit the same to become a law, [he] rescinded the action of his immediate predecessor, and withheld executive approval thereof, and announced his reasons therefor in a veto message which was duly lodged in the office of the Secretary of State and properly proclaimed."

The petitioner states that under this condition of fact the circuit judge maintains that, upon the approval of the bill by Acting Governor Moore, the same became a law, not subject to be vetoed, canceled or recalled by Acting Governor Moore or any successor of his; but the petitioner maintains that the act of signing by Governor Moore did not become operative so as to invest the said bill with the qualities of law until the same had been returned to the house in which it originated, if signed during the session, or had passed out of the possession of the Governor by being lodged with the Secretary of State, the final custodian of the written laws of the State.

The respondent states the facts substantially as the petitioner does, with the additional allegation that Governor Moore, when he signed the bill, directed the Governor's private secretary to deliver the bill to the Secretary of State; and it was also alleged that the signing of the bill by Governor Moore was intended to be final, and that he vacated the office, understanding and believing that his action was final and irrevocable; but this allegation is no stronger thant the one made by the petitioner wherein he says: "That the then Acting Governor, Hon. John I. Moore, affixed his signature to said bill with the intent and for the purpose of approving the same in the manner provided by the Constitution to make said bill effective as law."

It is thus seen that the parties have in petition and response joined issue as to the law governing a state of facts over which there is no dispute. Hence it is unnecessary for the court to pass on the competency of the evidence offered—a question upon which the authorities are divided—as the facts alleged by the petitioner are fatal to the veto relied upon by him. It may be added that the petition formed an issue of law on the facts therein stated, and later these facts were proved by the testimony to be the truth of the case; the pleader had candidly presented the real case.

Sec. 15, art. 6, of the Constitution, says: "Every bill which shall have passed both houses of the General Assembly shall be presented to the Governor; if he approve it, he shall sign it; but if he shall not approve it, he shall return it, with his objections, to the house in which it originated," etc. It is further provided in said section that if a bill "shall not be re-

turned by the Governor within five days, Sundays excepted, after it shall have been presented to him, the same shall be a law in like manner as if he had signed it; unless the General Assembly, by their adjournment, prevent its return; in which case it shall become a law, unless he shall file the same, with his objections, in the office of the Secretary of State, and give notice thereof by public proclamation within twenty days after such adjournment."

It will be noted that the Constitution does not require the Governor to report his approval of a bill to the General Assembly, nor file it with the Secretary of State in order for it to become a law. "If he approve it, he shall sign it."

The time allowed the Governor for the consideration of bills is a matter of privilege with him, and may be waived by him, and he may validly sign a bill any time within the period allowed. *Hunt* v. *State*, 72 Ark. 241.

The President of the United States was authorized to appoint justices of the peace for the District of Columbia, by and with the advice and consent of the Senate; and he was required to commission all officers thus appointed. Mr. Adams nominated Wm. Marbury to be a justice of the peace, sent his nomination to the Senate, which advised and consented thereto, and the commission was duly signed by the President and attested with the great seal of the United States. But before said commission was delivered to Mr. Marbury President Adams retired from office, and was succeeded by Mr. Jefferson; and the commission was withheld from Mr. Marbury, presumably under directions of the President. Marbury filed in the Supreme Court of the United States a petition praying a mandamus against Mr. Madison, Secretary of State, commanding him to deliver the commission. That court, speaking through Chief Justice Marshall, said:

"This is an appointment made by the President, by and with the advice and consent of the Senate, and is evidenced by no act but the commission itself. In such a case, therefore, the commission and the appointment seem inseparable; it being almost impossible to show an appointment otherwise than by proving the existence of a commission; still the commission is not necessarily the appointment; though conclusive evidence of it.

"But at what stage does it amount to this conclusive evidence?

"The answer to this question seems an obvious one. The appointment, being the sole act of the President, must be completely evidenced when it is shown that he has done everything to be performed by him.

"Should the commission, instead of being evidence of an appointment, even be considered as constituting the appointment itself, still it would be made when the last act to be done by the President was performed, or, at furthest, when the commission was complete.

"The last act to be done by the President is the signature of the commission. He has then acted on the advice and consent of the Senate to his own nomination. The time for deliberation has then passed. He has decided. His judgment, on the advice and consent of the Senate concurring with his nomination, has been made, and the officer is appointed. This appointment is evidenced by an open, unequivocal act; and, being the last act required from the person making it, necessarily excludes the idea of its being, so far as respects the appointment, an inchoate and incomplete transaction.

"Some point of time must be taken when the power of the executive over an officer, not removable at his will, must cease. That point of time must be when the constitutional power of appointment has been exercised. And this power has been exercised when the last act required from the person possessing the power has been performed. This last act is the signature of the commission." *Marbury* v. *Madison,* 1 Cranch, 49.

The same court in *Gardner* v. *The Collector,* 6 Wallace, 499, said: "The only duty required of the President by the Constitution in regard to a bill which he approves is, that he shall sign it. Nothing more. The simple signing of his name at the appropriate place is the one act which the Constitution requires of him as the evidence of his approval, and upon his performance of this act the bill becomes a law."

Again that court in *Seven Hickory* v. *Ellery,* 103 U. S. 423, in considering a bill which had passed both houses of the Illinois Legislature under a Constitution exactly the same as sec. 15, art. 6, Constitution of 1874, so far as this question is concerned,

speaking through Chief Justice Waite, said: "The bill becomes a law when signed. Everything done after that is with a view to preserving the evidence of its passage and approval." And further on the court in that case said: "And it becomes a law at the time when the event happens which is to give it validity."

It has been urged that the appointment and commission of an officer by the President is not analogous to the act of a President (or Governor) in approving a bill. But the authorities above quoted show that the Supreme Court of the United States has treated them as exactly of the same nature. The analogy between the completion of an appointment by the signature of the President to the commission, thus making it irrevocable, and the conclusion of the consideration of a bill by signing it, thus making it law, appears to be perfect. Each is the last act prescribed in order to consummate the power which is being exercised. And the opinion of the Supreme Court of the United States in *Marbury* v. *Madison,* written by the great Chief Justice, and re-enforced by the subsequent cases above quoted, should be, and is, of controlling weight in the determination of this question. As stated by Chief Justice Marshall, there must be a time when the power of the executive over the matter must cease; "and this power has been exercised when the last act required from the person possessing the power has been performed." And, as stated by Chief Justice Waite in the Ellery case, "everything done after that is with a view to preserving the evidence of its passage and approval." The act in the sequence of events necessary to make the bill at bar become a law was the signature of the Governor. "And upon his performance of this act the bill became a law;" and, as alleged in the petition, this act was performed by Acting Governor Moore "with the intent and for the purpose of approving the same in the manner provided by the Constitution to make said bill effective as law."

The discretion of the executive may be exercised until this point has been reached. When this point is reached, and he signs the bill in the exercise of his discretion, his power over the bill has terminated, and it is no longer a bill but is a law, and is not subject to veto by himself or his successor.

Petitioner has strongly pressed upon the court two de-

cisions of the Supreme Court of Illinois, *People* v. *Hatch*, 19 Ill. 283, and *People* v. *McCullough*, 210 Ill. 488, and they have been carefully considered.

The facts of the Hatch case were as follows: The Governor had through inadvertence and mistake signed a bill, and his approval of the bill had been announced to the house where it originated. Immediately discovering the mistake, he sent a communication within thirty minutes notifying it of the mistake. He completed a veto message, which was partly written at the time he inadvertently placed his signature to the bill, and at once sent it in. In view of the radical difference in the facts of that case and the case at bar, what may have been said by the court there could have but little bearing in a case where it is alleged that the signing of the bill was "with the intent and for the purpose of approving the same in the manner provided by the Constitution to make said bill effective as law."

In the McCullough case a bill was approved and signed by Governor Yates on the 12th of May, 1901. On the 13th of May the vetoed bill was filed in the office of the Secretary of State with the approval erased, and accompanied by a veto message. It was contended that early on the morning of the 13th, before vetoing the bill, it had been filed in the Secretary of State's office with the Governor's approval thereon, and that thereafter, on the same day, the Governor withdrew the bill from the office of the Secretary of State, erased his signature, and refiled it with the Secretary of State vetoed. The gist of the decision is as follows: "It is not the mere signing of a bill by the Governor within the time fixed by the Constitution that gives it vitality. He must approve it as well as sign it, and the approval must come before signing. The signing is only required as an evidence of the approval. We see no reason why, if the bill in the case at bar was signed by mistake and without approval by the Governor before it left his possession, and while it was still under his control, he could not erase or cancel the words of approval at any time before it passed beyond his control. We are, however, of the opinion that if, in the case at bar, the Governor himself, or through any one of his secretaries or clerks, deposited this bill in the office of the Secretary of State, with his approval indorsed upon it and signed by

himself, it thereby passed beyond his control, and he had no power thereafter to take the bill from the office of the Secretary of State, and veto it and return it to the Secretary of State's office, accompanied by his veto."

The court turns the validity of the bill upon the question of control, more than upon the question of approval. It seems sounder reason, however, to turn the question upon the intention of approval by the Governor, rather than upon the less important act of the Governor or his subordinate in handing the bill over to another official. The Illinois courts have reasoned as if the approval of a bill was like the signing and delivery of a deed. The same argument was made in *Marbury* v. *Madison.* The Chief Justice questioned the correctness of the analogy, but assumed that it was correct, for the sake of argument, and answered it as follows: "If, then, the act of delivery be necessary to give validity to the commission, it has been delivered when executed and given to the Secretary for the purpose of being sealed, recorded and transmitted to the party." If that were applied to the facts here, it would not help the position of the petitioner.

But it is not profitable to pursue the point further. The court is convinced that it is not a question of the physical control of the bill, but the question is, as is well stated in *People* v. *McCullough, supra,* that "it is not the mere signing of a bill by the Governor within the time fixed by the Constitution that gives it vitality. He must approve it as well as sign it, and the approval must come before signing. The signing is only required as an evidence of the approval." When, in token of approval, he signs it, intending it to become a law, then it has become a law, and that is the end of his power over it.

It has been forcibly argued that each house of the General Assembly may reconsider bills acted upon by it, and the judiciary may grant rehearings and new trials, and reconsider decisions rendered by it, and that the same privilege should be accorded to the Executive, the other co-ordinate department of the government. But all these powers must be exercised within the limits prescribed by law. No department can proceed according to its own untrammeled will, but must move according to fixed and determined rules of law regulating the duties of

each and the manner of the performance of such duties.

The houses of the General Assembly may, under the rules fixed and determined by them, allow a bill to be reconsidered, and individual members may change their minds upon the merits of the bill, and vote according to their change. But when the houses have exhausted this power of reconsideration, and the bill has passed the point where the law allows it to be reconsidered, then it is final, and it is not within the power of the General Assembly to recall it.

Courts may reconsider their decisions within fixed times, and judges may change their minds and render other decisions fitting to the change of opinion. But when the time for the reconsideration of a case has passed, and the term expired over which the court may control its judgment, then its action has become final, and can not be changed. For instance, this court may grant rehearings where petitions are filed within fifteen days, and it may recall any judgment rendered during a term; but when that time has expired, the power of the court over its judgment is gone. Then the judgment is irrevocable, either by the judges who made it or by those who may sit in their seats.

And so it is with the Executive. He may, within the time prescribed by the Constitution, consider and reconsider a measure; he may change and rechange his mind upon the merits of a bill before him. But when he has exercised his power over it, either by approval or veto, then the action is final and irrevocable, and, like the judgment of a court, when the time for reconsideration has passed, it is binding and unchangeable by the judge rendering it or any successor in office. The law has given him in the one case five days, and in the other twenty days, for consideration; and when that consideration has been given, when that discretion has been exercised, when the last act has been performed, and the bill is signed, then the bill is a law, and no more subject to veto than any other valid law.

Petition is denied.

### ON REHEARING.

Opinion delivered July 22, 1907.

HILL, C. J. Petitioner has forcibly re-presented his case, and it has again received the consideration of the court. He

earnestly insists that the court has permitted an undenied allegation of the petition to overthrow the record evidence in the office of the Secretary of State—records of which the court takes judicial cognizance—and which in this case, for convenience, were introduced in evidence. The court does not so regard it, but considers that the petition aptly summed up the facts based on the record evidence; and, instead of overthrowing the record evidence, the court was effectuating it when it accepted its crystallization in the pleadings.

Petitioner calls attention to the following sound proposition of law, which has often been repeated, and can not too often be called to the judicial mind: "That which purports to be a law of a State is a law, or it is not a law, according as the truth of the fact may be, and not according to the shifting circumstances of parties. It would be an intolerable state of things if a document purporting to be an act of the Legislature could thus be a law in one case and for one party, and not a law in another case and for another party; a law today and not a law tomorrow; a law in one place and not a law in another in the same State. And whether it be a law or not a law is a judicial question, to be settled and determined by the courts and judges." *Town of South Ottawa* v. *Perkins,* 94 U. S. 260; *Wilkes County* v. *Coler,* 180 U. S. 506; *Rogers* v. *State,* 72 Ark. 565.

In applying this principle to a test of an act under an agreed statement of facts, the Supreme Court of the United States, speaking through Mr. Justice Brewer, in *Chicago & Grand Trunk Ry. Co.* v. *Wellman,* 143 U. S. 339, said: "Our suggestion is only to indicate how easily courts may be misled into doing grievous wrongs to the public, and how careful they should be not to declare legislative acts unconstitutional upon agreed and general statements, and without the fullest disclosure of all material facts."

These principles were in the mind of the court when it accepted the facts as alleged in the petition as indicated in this statement in the opinion: "It may be added that the petition formed an issue of law on the facts therein stated, and later these facts were proved by the testimony to be the truth of the case; the pleader had candidly presented the real case."

In *Smithee* v. *Campbell,* 41 Ark. 471, it was said: "It is

the duty of the courts to know the law, statutory as well as un-written, and they may resort, of their own motion, to any means of information which may solve their doubts as to what is law and what is not. Allegations of facts which show that a law never was passed are simply argumentative, and suggestive. It is the same as to say there is no such law. Such facts need not be shown as evidence, but may be shown to the court in aid of its judgment."

The same thought was differently expressed by Mr Justice Miller in *Gardner* v. *Collector,* 6 Wallace, 499: "We are of opinion, therefore, on principle as well as authority, that when-ever a question arises in a court of law of the existence of a statute, or of the time when a statute took effect, or of the precise terms of a statute, the judges who are called upon to decide it have a right to resort to any source of information which in its nature is capable of conveying to the judicial mind a clear and satisfactory answer to such question; always seek-ing first for that which in its nature is most appropriate, unless the positive law has enacted a different rule." This statement was quoted in *South Ottawa* v. *Perkins,* 94 U. S. 260, and *Rogers* v. *State,* 72 Ark. 565.

The court found a difficult question as to the admissibility of parol evidence, a question upon which the authorities were divided, and found the effect of the record evidence felicitously expressed by the respective counsel in their pleadings, and being satisfied, as indicated, that these pleadings represented the real truth of the case as established by the record evidence, and also as established by the oral testimony of distinguished witnesses in whose evidence there was no conflict, felt safe in accepting these pleadings as presenting the ultimate truth of the question.

‹ While the court has not decided that the oral testimony was admissible on the issue as to the validity of the veto, yet it was certainly proper for the court to turn to it, in view of the ad-monition of Mr. Justice Brewer not to accept an agreed state-ment "without the fullest disclosure of all material facts" as a basis to test an act of the Legislature, in order to satisfy the court of the good faith and truth of the allegations made when testing the validity of an act of another co-ordinate department of government.

Petitioner seems to feel that his allegations have contributed to a result which, had he been more careful in his pleadings, would not have been reached. The court does not want the result to rest upon counsel's shoulders, nor upon any inadvertency in pleading. It merely accepted his allegations, fortified as indicated, as the truth of the case; and, as he had happily characterized the controlling feature of the evidence, he was frequently quoted. The same result is reached by the record evidence.

The court did not consider it necessary in the former opinion, for the reasons stated, to consider either the record or oral evidence; but, in order that all question of the propriety of resting the decision on the concessions in the pleadings be removed, the decision will be placed on the record evidence as well as the admitted facts in the pleadings. Mr. Greenleaf says that public· documents, such as executive proclamations, are admissible to prove pertinent facts when the statement is made therein by the person whose duty it is to make it, and the subject-matter belonged to his province or came within his official cognizance and observation. 1 Greenleaf on Evidence, § 491 (16 Ed.)

Therefore, the recitals of the Governor's proclamation which are pertinent to the issue, made within his province, and which state facts within his official cognizance, must be taken as record evidence, *prima facie,* at least, proving the facts recited.

These facts are thus proved: When he assumed the powers of Governor, he found this bill in the possession of the Governor's office, and that it had already been signed by his predecessor. ·The authority to act is indicated to be in the continued possession of the bill in the Governor's office and the five days allowed for consideration not having expired. (This authority was evidently based on the theory that the possession of the bill in the Governor's office continued the executive control over it till the expiration of the five days, notwithstanding it had been approved and signed by his predecessor.) These recitals, taken together with the bill itself, showing upon its face the erasure of the following: "Approved May 14, 1907, John I. Moore, acting Governor of the State of Arkansas," prove that the executive power over the bill had been exercised and exhausted before the attempted veto.

Motion for rehearing is denied.

McCULLOCH, J., (dissenting.)   I think the wrong conclusion has been reached by the court in this case, and I dissent from the views of the majority of the judges as expressed in the opinion written by the Chief Justice.   It should be said in the outset that neither court nor counsel have deemed material the fact that another individual, acting as Governor, had previously signed and approved the bill when the veto power was attempted to be exercised, instead of the two acts having been done by the same individual.   So far as that is concerned, the law with reference to the powers of the Acting Governor to veto the bill in question is the same, whether he had previously signed it himself, or whether it had been signed by his predecessor.   If Acting Governor Moore would have had the power to veto the bill while it remained in the executive office, and within his physical control, notwithstanding his having previously signed it with intention to approve it, then his successor, Acting Governor Pindall, had the power to do so.   The separate personal identity of the two individuals who successively discharged the duties of Governor are to be entirely disregarded in considering the question involved.

The Constitution of the State provides that "the Secretary of State shall keep a full and accurate record of all the official acts and proceedings of the Governor, and, when required, lay the same, with all papers, minutes and vouchers pertaining thereto, before either branch of the General Assembly."   Const. 1874, art. 6, § 21.

The statutes of the State provide that the Secretary of State shall "proceed to copy the acts, joint resolutions and memorials of the General Assembly as soon as they are approved by the Governor, and shall hand over copies thereof to the public printer," and that he shall certify the laws thus printed to be correct copies of the originals on file in his office.   Kirby's Digest, § § 3352, 3353.

That officer is thus made the custodian, and the only one, of the records pertaining to the Governor's office, and his office is the only place where record evidence of the official acts of the Governor may be found.   It is therefore manifest that the framers of the Constitution and the law makers intended to

provide a place where record evidence of the official acts of the Governor and the existence of the statute laws of the State shall repose; and to provide an official with power to make certificates of the existence of such records. This being true, is such record the sole evidence of such act, or can that record be contradicted or impeached by oral evidence? That is what I conceive to be the controlling question in this case.

It is not important to discuss whose duty it is, whether that of the Governor or Secretary of State, to convey to the office of the latter the written documents evidencing the official acts of the former; but when a record made by those officers in the manner and within the time prescribed by law is found in the office of the Secretary of State, it is conclusive and unimpeachable record evidence of the authenticity of the official acts therein recorded. It can not and should not be overturned by oral evidence.

The Constitution provides that a bill must be presented to the Governor, and that, "if he approve it he shall sign it," but if he shall not approve it he shall return it with his objection. His signature, then, is the sole evidence of his approval or disapproval, as that can not rest in parol.

This view is sustained by three courts of great learning and ability, and is, I think, unquestionably correct upon principle. The Illinois Supreme Court has laid down this doctrine in two cases, in both of which well-considered opinions were delivered.

In *People* v. *Hatch*, 19 Ill. 283, where the bill had been signed and marked approved by the Governor and delivered to the Secretary of State, and then withdrawn and vetoed, the court said:. "We choose to place our decision in this case upon the broad principle of power in the Executive to reconsider his approval of this bill, and to withdraw it, at any time while the bill remained before him, even though it had been signed by him ever so deliberately, and entirely independent of the fact that, in this instance, the Governor never did, in fact, approve the bill, and that his name was inadvertently signed to it, supposing that it was another bill. We prefer to vindicate a general principle, which is so essential to that careful deliberation which should ever characterize the making and approval of

our laws, and which is entirely conclusive of the question before us, rather than rely upon the peculiar circumstances of this particular case."

In *People* v. *McCullough*, 210 Ill. 488, where the facts were almost identical with the facts in the case at bar, the Governor, having signed and approved the bill, afterwards erased his signature and indorsement, and then vetoed it, the court, upon the question of admissibility of oral evidence to show the approval of the bill and delivery of it to the Secretary of State, said: "The indorsements on the bill show that it was not approved, and do not show that it was approved. If only record evidence can be introduced to·show that a bill was not properly passed by the two houses of the Legislature, certainly only record evidence can be introduced to show that the Governor filed the bill in the office of the Secretary of State with his objections in case the bill was vetoed by him. The Secretary of State is required by the statute to make and keep proper indices to the executive records and all public acts, resolutions, papers and documents in his office. In the case at bar records were introduced from the index department of the Secretary of State's office, and these records showed, by entries therein made on May 13th, 1901, that on that day the Partello bill was received by the Secretary of State accompanied by the Governor's veto thereto. It thus appears that the record evidence properly kept in accordance with the requirements of the statute in the Secretary's office shows that the bill in question was vetoed, and was filed within the ten days, specified in the Constitution, with the Governor's objection. No competent evidence having been introduced to contradict or overcome the showing thus made by the records, the court below was justified in holding that this Partello bill did not become a law, and in refusing to issue the writ of mandamus. The showing made by the record evidence was not overcome by the incompetent oral testimony."

In *Weeks* v. *Smith*, 81 Me. 538, where the Governor had first signed and approved the bill and caused it to be carried to the office of the Secretary of·State, and then recalled and vetoed it, the court rejected the oral testimony, and held that the record in the office of the Secretary was conclusive. The court said: "The relator seeks to overturn the solemn record that stands

against him by the testimony of the Governor's private secretary and other witnesses (the Governor being dead) whose evidence is supposed to show that the Governor approved the act by signing it and leaving it upon his table in the executive chamber to be taken to the Secretary's office, in the usual course of business, where it was taken during the Governor's absence at dinner, but who upon his return immediately called for the act and on the same day returned it to the Senate with his veto. Had the act been deliberately deposited in the Secretary's office by the Governor, it is not to be presumed that the Secretary of State would have surrendered it and allowed it to have been taken from his custody. On the other hand, if by mistake it was left in his office without authority from the Governor, it could hardly be considered as the deposit of a document in his custody, and therefore did not become the record of a statute that, if lost or destroyed, could be declared by the court from its judicial knowledge as an existing law, under the doctrine of the case of *The Prince,* 8 Coke, 28, * * * The act in question has been neither lost nor destroyed, but is now a solemn record in the Secretary's office, showing that it never became a statute; and the parol testimony relied upon to establish a lost or destroyed record is incompetent, inasmuch as in seeking to set up a lost record it flatly contradicts an existing one."

The clear result of these decisions is that where the Governor, within the time given him by the Constitution for the approval or disapproval of a bill, makes a record in the office of the Secretary of State of his final action, that record is conclusive and can not be impeached by oral evidence showing that he had previously taken other action in disposing of the bill. The final deposit of the bill in that office, bearing the indorsement the signature of the Governor, constitutes such a record.

The filing of an approved bill in the office of the Secretary of State is manifestly the time when it becomes a law, unless the Governor fails to return it within the time given him for consideration, in which case it becomes a law at the expiration of that time. If that be not so, how is the Secretary of State to perform his duty of preserving and certifying the existence of the statutes? There is no other means for him to ascertain

what the act of the Governor is in approving or disapproving
a bill than as manifested by the filing of the bill in the Secre-
tary's office with his approval or disapproval or by failing to re-
turn it within the time required. Surely, he is not presumed to
know and take cognizance of the hidden acts and intentions of
the Governor, nor is he bound to inquire, when the Governor
files an approved or disapproved bill in his office, whether or not
the Executive had previously taken inconsistent action thereon.

The law requires the Secretary of State to "keep a full and
accurate record of all the official acts and proceedings of the Gov-
ernor," and he can only keep a record of those acts and pro-
ceedings which the Governor makes known to him in the man-
ner provided by law. If the Governor makes known to him in
the constitutional manner the fact of his having vetoed a bill,
he is not presumed to know, and is not bound to take notice
of the fact, that the Governor had previously taken other action
on the bill and then changed his mind, and reversed his decision
before the bill left his possession.

The case of *Field* v. *Clark,* 143 U. S. 649, involved an at-
tack upon the tariff act of Congress of 1890, and an attack was
made to show that the enrolled act, as attested by the Vice
President and Speaker of the House of Representatives, as ap-
proved by the President and deposited with the Secretary of
State, omitted an important section contained in the act when
it was enacted by the two houses of Congress, and was not in
fact the act which was passed. The court held that the enrolled
attested act was conclusive evidence of the enactment, and Mr.
Justice Harlan, in delivering the opinion of the court, said:
"The signing by the Speaker of the House of Representatives
and by the President of the Senate, in open session, of an
enrolled bill is an official attestation by the two houses of such
bill as one that has passed Congress. It is a declaration by the
two houses, through their presiding officers, to the President,
that a bill, thus attested, has received, in due form, the sanction
of the legislative branch of the Government, and that it is de-
livered to him in obedience to the constitutional requirement
that all bills which pass Congress shall be presented to him. And
when a bill, thus attested, receives his approval, and is deposited
in the public archives, its authentication as a bill that has passed

Congress should be deemed complete and unimpeachable. As the President has no authority to approve a bill not passed by Congress, an enrolled act in the custody of the Secretary of State, and having the official attestation of the Speaker of the House of Representatives, of the President of the Senate, and of the President of the United States, carries, on its face, a solemn assurance by the legislative and executive departments of the government, charged, respectively, with the duty of enacting and executing the laws, that it was passed by Congress. The respect due the co-equal and independent departments requires the judicial department to act upon the assurance, and to accept, as having passed Congress, all bills authenticated in the manner stated; leaving the courts to determine, when the question properly arises, whether the act so authenticated is in conformity with the Constitution."

It is true the opinion just quoted from is based upon the doctrine that journal entries of the legislative branch of the government can not be used to impeach the enrolled act, and this court has held to the contrary rule; but it establishes and upholds the principle, whether the journal of the Legislature may be looked to as controlling or not, that a solemn record of the co-ordinate branch of the government can not be impeached by evidence of less dignity. It fully establishes, I think, the principle that a bill found in the office of the Secretary of State, attested by the proper indorsement of the Governor, carries on its face a solemn assurance of its approval or disapproval by that officer, which is complete and unimpeachable.

The Illinois court holds, as we do, that journal entries of the Legislature control the enrolled act, yet they hold, in the cases hereinbefore cited, that oral testimony can not be accepted to impeach the record of the Secretary's office of the action of the Governor upon the bill.

But it is said in the majority opinion that the Acting Governor has, in his veto message and proclamation, brought upon the record evidence of his lack of power to veto the bill at that time, and has thus made a record of equal dignity with that of his indorsement of disapproval on the bill. In other words, that his veto message, reciting the fact that the bill had previously been signed by the former Acting Governor, bore its death

wound on its face. I do not think so. He is not required to state in his veto message the facts concerning the status of the bill, and he did not, by embodying references thereto in the message, make them evidence of the facts therein recited. He is not required by law to state whether any executive action has been previously taken concerning the bill, nor, in this instance, that the bill had previously been signed by his predecessor, and his recital of that fact did not, in my opinion, make record evidence of its existence. The Constitution merely provides that if, after the Legislature adjourns, the Governor disapprove a bill, he shall "file the same, with his objections, in the office of the Secretary of State, and give notice thereof by a public proclamation." Const. art. 6, § 15.

The fact that his predecessor had previously signed the bill was not an "objection" to the bill, nor reason for the veto; therefore, a recital of such fact formed no proper part of the veto message.

However, if we accept, as proper evidence, the recitals of the veto message, I do not think it is sufficient to overturn the record of his disapproval or to show that he had no power to exercise the veto. The message only recites, in that particular, that the Acting Governor found the bill still in the executive office when he assumed the duties of the office, though it had already been signed by his predecessor. The statement is a declaration by the Acting Governor that the bill was still in the possession of the executive and still within executive control. It would be precisely the same if he had vetoed the bill and said in his message, "I signed this bill yesterday with the intention of approving it, but retained it in my possession, and have concluded to disapprove and veto it, which I now do." Would it be contended for a moment that such a declaration as that in a veto message would "bear its death wound on its face," and nullify the veto? Surely not.

There must of necessity be, and there is, some point of time when the power of the executive over a bill ends and when it becomes a law. The Constitution has plainly fixed the limit of time during which the executive may retain a bill in his control, and has prescribed what shall become of it when his control over it ceases. Now, as long as he retains physical

control over the bill by keeping it in his possession during the period given him for consideration, he reserves his final decision, and if, after having signed the bill, he still retains it in his possession, his power over it is complete. I think it is erroneous to say, as the majority have said in their opinion, that when the Governor signs a bill with the intention of approving it, the executive power has been exercised, and is exhausted, even though the executive still keeps the bill in his possession and retains dominion over it. Such a rule leads to hopeless confusion and uncertainty in the law, for that which might appear from the record to be the final action of the executive in approving or disapproving a bill might be set at naught by proof of prior inconsistent action on the same measure. This precise question was decided by the Illinois court in the following language: "Under the Constitution the Governor has ten days within which to consider a bill that has been presented to him, and to determine whether or not he will approve and sign it or veto it. If he should sign the bill and mark it approved, he would have a right to reconsider his act, and erase his approval, while the bill still remained under his control, and before the expiration of the time allowed to him by the Constitution for its consideration." *People* v. *McCullough, supra.

It seems to me to be the only safe guide, in determining whether or not a bill has or has not received the approval of the executive, to accept as conclusive the final action of the Governor as reflected by the record thereof made in the office of the Secretary of State in the manner and within the time prescribed by law. In that manner and place alone can it appear with certainty so that all may see and know, and where the Secretary of State may, in accordance with the duty imposed upon him by law, certify its existence.

The Supreme Court of Maine, in the case hereinbefore cited, has, I think, declared the correct rule as follows: "The signature of the Governor to an act of the Legislature is conclusive evidence of executive approval against everyone but himself. He alone should be permitted to dispute it, and only then when he holds control of the act, and before he shall have deposited it in the archives of the State, for then it becomes operative as expressing the legislative will in the form of a

statute. It has then passed under the control of the constitutional officer whose duty it is to 'carefully keep and preserve it.' "

The views of the majority in this case fail, I think, to find support in sound reason, and certainly find no support in the authorities. The case of *Marbury* v. *Madison* does not bear at all upon the question involved in this case. The act of the President in appointing Marbury had become final by signing the commission and filing it with the Secretary of State. It had passed entirely beyond his control, and nothing remained for him to do. To treat that case as an authority supporting the views of the majority is to put it in direct conflict with numerous later decisions of the same court, especially *Field* v. *Clark, supra*. I prefer to follow the lead of the Illinois and Maine courts in the cases herein cited, which are absolutely decisive of the question before us, and which I think establish a safe and sound rule, consistent with that respect which is due from one of the co-ordinate branches of the government to another. Any other rule leads to confusion and uncertainty.

Mr. Justice RIDDICK, concurs in this opinion.