THE PEOPLE, *ex relatione* Charles H. Lanphier and George Walker, Complainants, *v.* OZIAS M. HATCH, Secretary of State, Respondent.

19    283
.210   ¹498
e210   ¹513
210    515

### APPLICATION FOR A MANDAMUS.

The Governor may, within the period fixed by the constitution, deliberate as to the propriety of approving an act of the General Assembly, and may sign such act, and erase his signature thereto, at pleasure; and until it has passed his control by the constitutional and customary modes of legislation, he may re-consider and retract any approval previously made.

The report, to either branch of the General Assembly, by the private secretary of the Governor, or by the Secretary of State, of the approval of an act by the Executive, is not necessary to its validity.

If the Governor shall deposit an act of the General Assembly, approved by him, with the Secretary of State, it is then beyond his further action, although his approval was put to the act by mistake.

The fact that the Governor has inadvertently placed his approval and name to an act of the General Assembly, which signing and approving has been announced by his private secretary, in his routine of business, but without the knowledge of the Governor, does not deprive the Governor of his privilege of striking his approval from the act, if the bill remains in his custody.

A power to rectify an error, at the proper time, exists with all departments of the government.

THE relators state that they are authorized to print the laws passed at the session of the twentieth General Assembly of this State, and have a right to demand of the Secretary of State true and perfect copies of all the laws passed at said session, which are in his possession and custody; that, on the eighteenth day of February, 1857, the said General Assembly being in session, passed a law, entitled " An Act to create senatorial and representative districts, and apportion the representation in the General Assembly of this State," which act, being so passed, was signed by the speaker of the House of Representatives, and by the presiding officer and speaker of the Senate; and on the same day, the bill was signed by the Governor, and thereby became a law of the State; and on the same day, the Governor, by his private secretary, reported to the House of Representatives, wherein said bill originated, that he had approved and signed the same; that said bill, after the same was so signed by said two presiding officers, and by said Governor, was delivered to the Secretary of State, and the same is in his possession and custody as such officer; that the Secretary of State failed to furnish the relators with a copy of the said bill, within the time fixed by law, or at any time since; that the relators have demanded a copy of the bill, which has been denied them, and they cannot, therefore, print and publish the same with the other laws, and pray a writ of mandamus, to

compel the Secretary to furnish a certified copy of the act to the relators, to be by them, as printers and publishers of the laws of said General Assembly, printed and published as one of the laws of this State.

The respondent accepted service, and made return to the alternative writ of mandamus; that the relators were public printers, and entitled to copies of all laws, etc.; that the act referred to was passed at the time mentioned, signed by the speakers, and presented to the Governor, who did, at the foot of the bill, at the usual place thereon, write as follows:

" *Approved Feb.* 18, 1857.

WM. H. BISSELL."

and that, on the same day, the private secretary of the Governor did report to the House of Representatives, wherein said bill originated, that the Governor had approved and signed said bill; but he denies that said bill ever became a law, or that the Governor ever approved the bill, or reported it, or knowingly or intentionally caused or permitted it to be reported to the house as approved and signed by him. On the contrary, the Governor placed his signature and other words upon the bill in and by mere mistake, believing at the time he was so placing his signature and other words upon some other one of the numerous bills then before him, and claiming his official attention; that his private secretary reported the bill as approved, not by the special direction of the Governor, nor with his knowledge or special consent, but merely in said secretary's routine of customary duty, he, finding that bill, with many others, on the Governor's table, bearing his approval and signature; that the Governor was never conscious that he had placed his signature to the bill until after information was brought to him of its having been reported to the House of Representatives; that the bill remained in the possession of the Governor during all the time it bore his signature, and that he never parted with the possession of it until he had first erased his signature therefrom; that so soon as the Governor discovered he had placed his signature to said bill, he sent a message to the speaker of the House of Representatives, informing him that said bill had been inadvertently signed, and had not been approved, which message was read aloud to the House of Representatives within thirty minutes of the time of the delivery of the former message or report. Respondent refers to this message as a part of his return. That, on the same day, the Governor completed a veto message of said bill (which message was partially written at and before the time he placed his signature to said bill), and returned said bill, together with his objections to its becoming a law, to the House, whence it originated, having first erased

his signature and approval from said bill, by drawing a pen over the same. That respondent has the bill in his possession, but not officially, as Secretary of State ; that he has refused to give relators a copy of said bill to be printed and published as a law, but has not refused to give it for any other purpose, and has furnished a copy to aid relators in this application. That the bill came to the hands of respondent, not in the customary mode, but, contrary to usage, was handed to him by the speaker of the House of Representatives. That the signature of the Governor has never been to the bill while it has been in possession of the respondent. That upon the executive records or journal, said bill is entered as "rejected, and returned to the House of Representatives, with the Governor's objections, February 18th, 1857." These reasons are given as an answer to the application.

To this return there was a demurrer, which was argued, and upon which the whole question was submitted to the court. The application for a mandamus was denied.

W. C. GOUDY, JOHN A. McCLERNAND, and R. S. BLACKWELL, for the Relators.

J. GRIMSHAW and A. LINCOLN, for the Respondent.

CATON, C. J. The object of this application, is to test the validity of an act passed at the last session of the General Assembly, entitled " An Act to create senatorial and representative districts, and apportion the representation in the General Assembly of this State." The facts, as admitted upon the record, are these : The act in question, having, in a regular and constitutional mode, passed both branches of the General Assembly, and having been properly signed by the speakers of both houses, was, on the 18th of February, 1857, regularly laid before the Governor for his approval. That on the same day the Governor, having many bills before him for examination and approval, through inadvertence and mistake, added to the bill the words of approval, with his signature. That at the time this was done, he supposed it was some other bill, and that he never did in fact approve of this bill, but always intended to return it with his objections, to the House of Representatives, where it originated. That his private secretary, finding the bill with others on the Governor's table, with his note of approval and signature attached thereto, delivered a message to the House of Representatives, as coming from the Governor, announcing that he had approved of said bill. That this was done without the special direction, sanction or knowledge of the Governor, al-

though according to the usual routine of business. That so soon as the Governor was informed that it had been announced to the house, that he had approved of the bill, and within thirty minutes of the announcement of approval by the secretary, he sent a message to the speaker, which was read to the house, informing the members that he had not approved said bill, but that it had been signed by him through inadvertence, and in the course of the same day he returned the bill to the House of Representatives as disapproved by him, with his name erased therefrom and with his objections thereto. From the time the bill was laid before the Governor for his approval, till it was returned to the house with his objections and as disapproved, it remained before him and in his possession and control. The only entry in the executive journal in reference to this bill, is under date of the 18th February, 1857, and shows that the bill was disapproved by the Governor, and returned to the house with his objections.

Upon this state of facts we are very clearly of opinion that the act did not become a law. The only constitutional provision bearing on this subject is the 21st section of the 4th article, and is in these words: " Every bill which shall have passed the Senate and House of Representatives, shall, before it becomes a law, be presented to the Governor ; if he approve, he shall sign it ; but if not, he shall return it, with his objections, to the house in which it shall have originated ; and the said house shall enter the objections at large on their journal, and proceed to reconsider it. If after such reconsideration, a majority of the members elected shall agree to pass the bill, it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered ; and if approved by a majority of the members elected, it shall become a law, notwithstanding the objections of the Governor ; but in all such cases the votes of both houses shall be determined by yeas and nays, to be entered on the journal of each house respectively. If any bill shall not be returned by the Governor within ten days (Sundays excepted,) after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the General Assembly shall by their adjournment prevent its return, in which case the said bill shall be returned on the first day of the meeting of the General Assembly after the expiration of the said ten days, or be a law." This requires the Governor, if he does not approve the bill, to return it to the house whence it originated, with his objections, within ten days, or it shall become a law as if approved, but neither this nor any other part of the constitution says what shall be done with the law after it is approved, or after it acquires vitality by remaining in the Governor's hands

for the ten days. Provision is made for that by the seventh section of chapter ninety-six, Rev. Stat., as follows : " All public acts, laws and resolutions which have been or shall be passed by the General Assembly of this State, shall be carefully deposited in the office of Secretary of State, and the Secretary of State is hereby charged with the safe keeping of said office, and all laws, acts, resolutions and records, deposited or which shall hereafter be deposited therein." This law does not prescribe the mode in which the laws shall be conveyed to the secretary's office, but that duty imperatively devolves upon that department in whose hands or by whose action they become finished and acquire vitality. If a law receives the last sanction required by the constitution to give it vitality, in the hands of the Governor, either by being approved and signed by him or remaining in his hands for ten days, then the duty of depositing it in the secretary's office may reasonably devolve upon him, while a law which has been vetoed by the Governor, and subsequently passed by both houses, with the constitutional majority, would properly be sent to the secretary's office from the house in which it was last passed. There is certainly no constitutional or statute law, which requires the Governor to return to either house of the General Assembly, any law which he has approved or which becomes a law by lapse of time, nor do we understand such to be the practice. It has, however, long been the practice for the Governor to report, formerly through the Secretary of State, and recently through his private secretary, to the house where bills originated, his approval of them. Such report, however, not being a formality required or known to the laws, is not essential to their validity. Such report is but a matter of formal courtesy, and not of constitutional obligation—a courtesy very proper, no doubt, but not a necessary formality. Such report is no part of the proceeding necessary to the making, or imparting vitality to a law. By it no act can become a law, which without it would not be a law, so that in this case, the report made by the private secretary to the House of Representatives, can have no influence one way or the other in determining whether this act became a law or not. Had the Governor returned the bill with his approval upon it to the house, with the message of approval, and without objection, then we think the act would have been beyond his control, and he could not retract his approval, although made by mistake, unless withdrawn by the consent of the house; or had he deposited the law, with his approval upon it, with the Secretary of State, then it would have passed beyond his control and its *status* would have become fixed and unalterable, except by appeal ; although his approval may have been signified by mistake.

The constitution allows the Governor to retain all bills for ten days, for consideration, and while he does retain them, within that time, they are as much within his control, and his action on them is as subject to reconsideration, as are bills in either house of the General Assembly while remaining before them. Take, for instance, a bill which has been returned to the House of Representatives by the Governor, with his objections, and has passed that house, notwithstanding the Governor's objections, and sent to the Senate, where, in like manner, it has passed, with all the forms of legislation. It has now received all the sanction which the constitution requires to make it a law, and yet no one acquainted with the constant practice of legislative bodies, will deny that it is perfectly competent for the Senate to reconsider the final vote, and thus take from it that concluding act which had finally completed it; and this right to reconsider remains, so long as the bill remains in the custody of the body proposing to reconsider, unless they have some special rule restraining the right to reconsider. The matter is still *in fieri* while pending before, and within the control of either house. And it is not an unfrequent occurrence for one house, which has finally passed a bill and sent it to the other house, to request its return, which being done, the vote on its final passage is reconsidered, when it is amended or rejected; and instances are not wanting in the history of our legislation, where bills which have been laid before the Governor for his approval, have been returned to one of the houses of the General Assembly, and then finally defeated, and no one has ever thought of questioning the legality of such a proceeding. And why may not the Governor reconsider his act of approval of a bill while it is yet before him, as well as either house of the General Assembly? Does he require less time for reflection, or less opportunity to reconsider an inadvertent or an unadvised act? Is he more likely to be certainly right when he puts his name to a bill than the members of the other department of the government when they vote upon it? In the one case, the executive acts without the aid of discussion and argument; in the other, the members vote with all the advantages of an interchange of opinion on the subject. The public good no more requires the act of one to be irrevocable than the other. There must be a time when this right to reconsider terminates—and the same rule applies in the one case as in the other—and that is, when the bill or law has passed from the custody or control of the department or body seeking to reconsider. While within such control and custody, the right to reconsider is a necessary incident to the power to act. This right to reconsider is not peculiar to legislative bodies, but is common to all human transactions where

there is a discretion to be exercised. An individual may erase his name from a deed, no matter how deliberately it may have been signed, at any time before delivery; and even courts of justice may reconsider their most solemn judgments while they are yet before them. And shall the approval of a law by the executive be a solitary exception ? Shall his name, once placed to a bill, become irrevocable, although the pen is still in his hand, and the ink not yet dry ?—even though it may have been placed there by mistake or fraud—inadvertently or unadvisedly ? What great principle of public policy requires the adoption of such an iron rule in this solitary case, while in all other cases, whether of public or private concern, a party may reconsider and retract—may change his purpose and his decision, while the subject matter still remains before him ? The time given by the constitution to the executive during which he may retain a bill, shows that it was expected that he would deliberate, consider and reconsider, so long as he chose to retain the bill, within the specified time, and the writing of his name upon it fifty times within that period cannot deprive him of that right, unless he permits the time given him for that purpose to elapse, or by passing it beyond his control. While it is yet before him, neither himself nor the public is concluded by anything which he may do. After that, his constitutional power is exhausted. The subject matter is gone from him, and he may no longer deliberate or retract. He and all others are concluded. The record which declares his acts, can alone speak his intentions.

We choose to place our decision in this case upon the broad principle of power in the executive to reconsider his approval of this bill, and to withdraw it, at any time while the bill remained before him, even though it had been signed by him never so deliberately, and entirely independent of the fact that, in this instance, the Governor never did, in fact, approve the bill, and that his name was inadvertently signed to it, supposing that it was another bill. We prefer to vindicate a general principle, which is so essential to that careful deliberation which should ever characterize the making and approval of our laws, and which is entirely conclusive of the question before us, rather than rely upon the peculiar circumstances of this particular case.

Had there been no message of approval delivered to the house by the private secretary of the Governor, notwithstanding his note of approval and signature were placed upon the bill and then erased, probably no one would have thought of claiming that it had become a law, before it was returned as disapproved by the Governor, with his reasons therefor ; and yet, no one can contend, with even a show of plausibility, that such report could make it a law, when it was not a law without it ; or, in fact, could have the least influence one way or the other

upon the question of its validity as a law. It was a proceeding not known to the constitution, or required or sanctioned by any statute. But even if these reports of approval were entitled to any consideration, in a legal point of view, as in any way strengthening the executive sanction, surely they should, in fact and in truth, emanate from the executive, and not, as in this case, originate with and emanate solely from the private secretary himself. It should be, in truth, the message of the Governor, else the secretary becomes the executive instead of the Governor. Here the Governor authorized the delivery of no such message, and neither he nor the people were bound by it. We are of opinion that the return of the respondent shows sufficient cause, and that the demurrer thereto should be overruled.

*Separate Opinion, by* BREESE, J. The prominent fact in this case is, that the bill in question was not, for a moment, out of the possession and control of the Governor, after he had placed his name to it, as the facts show inadvertently, until he had erased his name, and returned the bill, with his objections, to the house in which it originated. During all this time, he had complete control of it, and had he placed his approval to it, designedly and understandingly, he could withdraw it.

As in every other department of the government, so in the executive, whilst the matter before it is *in fieri,* there is the *locus pœnitentiæ*—the right to reconsider—to change an opinion expressed, and to cancel a signature of approval.

A power to rectify an error at the proper time, exists with all departments of the government, for they are all liable to err. It is an infirmity of our nature, from which a governor cannot claim exemption.

The executive, in his judgment on a bill, is only concluded by his final act upon it. In this case it is distinctly manifested, by erasing his approval, and returning the bill, with his objections, to the house in which it originated. He is not concluded by the previous act of his secretary, in reporting the bill, as approved, to the house, he still having custody and control of it.