Southern Pacific Company v. W. T. Meadors & Company.

Decided May 7, 1910.

**1.—Carrier—Foreign Corporation—Venue—Statute.**

Under the provisions of section one of the Act of 1905 (Gen. Laws, 1905, p. 29) a foreign railroad corporation may be sued jointly with another carrier in any county in this State wherein the codefendant carrier might be sued, although the foreign corporation owned no railroad in this State and was not engaged in any railroad business in this State, but did have an agent in the State.

**2.—Same—Attempt to Limit Liability—Act of Congress.**

Under the provisions of section 20 of the Act of Congress of June 29, 1906, a common carrier receiving property for transportation from a point in one State to a point in another is liable to the owner for any loss or damage to the same whether such loss or damage occurred on its own line or on the line of any connecting carrier to which the property might be delivered, and any attempt to limit such liability by contract would be invalid.

ON REHEARING.

**3.—Trial—Issues—Pleadings of Both Parties.**

The issues raised in the trial of a case and the law applicable thereto must be determined from a consideration of the pleadings of the defendant as well as those of the plaintiff, and when a defendant raises certain issues by its pleading and invokes certain laws for its protection, it can not complain, in case of judgment against it, that the issue was not raised nor the law invoked by the plaintiff.

**4.—Legislative Act—Power to Suspend.**

A legislative Act having once gone into effect as a law could not be repealed or suspended by a joint resolution of the legislative body. This rule applied to the Act of Congress of June 29, 1906, regulating commerce.

Appeal from the District Court of Mitchell County. Tried below before Hon. Jas. L. Shepherd.

*Baker, Botts, Parker & Garwood* and *Ed. W. Smith,* for appellant. —The court erred in overruling the plea of privilege of the Southern

Pacific Company. St. Louis, A. & T. Ry. Co. v. Whitley, 77 Texas, 126; Texas & P. Ry. v. Lynch, 97 Texas, 25; St. L. & S. W. Ry. Co. v. McKnight, 99 Texas, 289.

The evidence showing affirmatively that there was no through shipment or joint contract, and that appellant shipped said horses upon contracts limiting liability to its own line, no part of which was in Texas, the Acts of May 20, 1899, and of March 13, 1905, had no application. Texas & P. Ry. Co. v. Lynch, 97 Texas, 25; St. Louis S. W. Ry. Co. v. McKnight, 99 Texas, 289; Missouri, K. & T. Ry. Co. v. Elliott, 99 Texas, 286; Missouri, K. & T. Ry. Co. v. Bumpas, 38 Texas Civ. App., 410.

There being no through contract of shipment and no joint liability, and the appellant being a foreign corporation, and its plea of privilege being in due form and supported by the undisputed proof, the court erred in overruling the same. St. Louis, A. & T. Ry. Co., v. Whitley, 77 Texas, 126; Peterson v. Chicago, R. I. & P. Ry. Co., 205 U. S., 364.

*Ed. J. Hamner,* for appellees.

CONNER. CHIEF JUSTICE.—This suit was instituted in the District Court of Mitchell County by appellees against the Southern Pacific Company, a foreign corporation, and against the Texas & Pacific Railway Company whose line of railway is operated through Mitchell County, to recover damages to two several shipments of horses loaded at points in the Territory of Arizona, on the line of the first named company and transported to El Paso, Texas, and thence over the line of the Texas & Pacific Railway Company to Pecos, and to Colorado City, Texas. Through bills of lading were issued by the Southern Pacific Company, but the transportation, as appellant alleges, was upon the terms of written contracts limiting the liability of the initial carrier. Appellant pleaded, among other things not necessary to notice, that no part of its road was operated in Texas, and asserted its privilege of being sued, if at all, in Galveston County, where only it had an agent in this State. The court heard appellant's plea of privilege upon its merits and overruled it. Thereafter, a trial before a jury resulted in a judgment for appellees in the sum of four hundred dollars against the Texas & Pacific Railway Company and for the further sum of one thousand, seven hundred and fifty dollars against the Southern Pacific Company, from which judgment the latter company alone has appealed.

Perhaps the most material question presented is that raised by appellant's second assignment of error, complaining of the action of the court in overruling its plea of privilege. The plea is in due form; avers that appellant is a foreign corporation and neither owns nor operates a line of railway in the State of Texas; that it had but one agent in Texas, who was located at Galveston, where alone, if at all, the suit could be maintained, and that the Texas & Pacific Railway Company had been joined as a co-defendant for the fraudulent purpose of conferring jurisdiction upon the court. No evidence in support of this latter allegation is pointed out and we assume that there is none. Appellant's proposition is that "this was an interstate ship-

ment, originating in the Territory of Arizona and destined to point in Texas. There was no allegation of a through or joint contract for said shipment, and the proof showed affirmatively that it was not a through or joint contract of shipment. The appellant was a foreign corporation with no railroad in Texas, and not engaged in any railroad business in Texas, and if it could be sued in Texas at all, it was entitled to be sued in Galveston County, where the only agent it has in Texas was located."

Section 1 of the Act approved March 13, 1905, provides: "That whenever any passenger, freight, baggage or other property has been transported by two or more railway companies . . . or partly by one or more such companies . . . operating or doing business as such common carriers in this State, or having an agent or representative in this State, suit for damege or loss or for any other cause of action arising out of such carriage, transportation or contract in relation thereto, may be brought against any one or all of such common carriers . . . so operating or doing business in this State, or having an agent or representative in this State, in any court of competent jurisdiction in any county in which either of such common carriers . . . operates or does business, or has an agent or representative: provided, however, that if damages be recovered in such suits against more than one defendant, not partners in such carriage, transportation or contract, the same shall on request of either party be apportioned between the defendants by the verdict of the jury, or if no jury be demanded, then by the judgment of the court." See General Laws, 1905, page 29.

It is not contended, nor can it be, that the allegations of appellees' petition do not state a cause of action against the Texas & Pacific Railway Company maintainable in Mitchell County, nor can it be contended that a cause of action is not stated as against appellant. In the absence of proof, therefore, of the averment that the Texas & Pacific Railway Company was joined in the suit for the fraudulent purpose of conferring jurisdiction, the law above quoted authorized suit against appellant in Mitchell County, it having an agent in this State, regardless of the question whether or not it operated any part of its road in Texas. See Atchison, T. & S. F. Ry. Co., v. Williams, 38 Texas Civ. App., 405 (86 S. W., 38); Toland v. Sutherlin, 49 Texas Civ. App., 538 (110 S. W., 487).

Appellant also insists in substance that by the terms of its written contracts of shipment which were read in evidence, its liability was limited to damages occurring on its own line as well also as in the amount recoverable. Assuming that the contracts were as asserted by appellant and not oral and without limitation, as appellees pleaded, we nevertheless think appellant's contentions wholly untenable in view of section 20 of the Act of Congress, June 29, 1906, amending an Act to regulate commerce, which provides among other things: "That any common carrier, railroad, or transportation company receiving property for transportation from a point in one State, to a point in another State shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier,

railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad or transportation company from the liability hereby imposed: provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law. That the common carrier, railroad or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad or transportation company on whose line the loss, damage or injury shall have been sustained the amount of such loss, damage or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof." See Supplement, 1907, Federal Statutes, Anno., page 180.

By the terms of this Act appellant is therefore liable upon the through bill of lading issued by it, regardless of the attempted limitations of the contract. See Louisville & N. R. Co. v. Scott, 118 S. W., 990; Galveston, H. & S. A. Ry. v. Wallace, 117 S. W., 169. It also follows that it is immaterial that the transportation of appellees' horses from the Arizona line to El Paso was over the Galveston, H. & S. A. Railway, and the court correctly refused all special charges in aid of the limitations of the contract.

We conclude that all assignments should be overruled and the judgment affirmed.

### ON REHEARING.

Appellant, among other things, insists that we were in error in giving effect to the Act of Congress cited in our original opinion, for the reason that appellees alleged no facts authorizing them to recover under said Act, and did not seek to recover thereunder, but joined the appellant and its connecting carriers for the purpose of recovering against each of them separately for the alleged damages to the horses involved. True, appellees did not allege a contract by appellant for through shipment and seem not to have based their suit on the Act of Congress of June 29, 1906, but the necessary facts were put in issue by appellant's answer. It is distinctly alleged in appellant's second amended original answer upon which, together with appellees' pleadings, the case was tried, that the shipments in question were made by virtue of "written contracts duly and legally executed, by and between the plaintiffs and this defendant" at Bowie, Arizona Territory, on the third and fourth days of July, 1906, a number of the provisions thereof limiting appellant's liability being specially pleaded, and the Interstate Commerce Law, as well as the law of Arizona, was specially invoked. In support of this answer the contracts were read in evidence by appellant. Among them we find what is designated as "Exhibit A: Live Stock Shipping Order Contract and Bill of Lading, dated Bowie Station, 7/4/1906," which is plainly, we think, a "receipt or bill of lading" for appellees' horses within the meaning of that part of the section of the Act of Congress quoted in our original opinion. It states the number and describes the horses as "range";

it states the consignee as "W. T. Meadors", and the destination as "Colorado City, Texas," thus showing the interstate character of the shipment, which, however, was otherwise expressly alleged. There were other stipulations governing the entire transportation from the initial point to destination undertaking to specify not only rights, duties and limitations relating to the parties to the contract, but also those of subsequent carriers, thus substantially making it a contract for through shipment within the construction of such contracts given by us in the case of Texas & P. Ry. v. Townsend, 106 S. W., 760, in which writ of error was refused by our Supreme Court. There was a like bill of lading and contract relating to the shipment that went to Pecos, except that the destination was given as "New Orleans, La.," and the consignee as "W. T. Meadors & Company." Appellees attempted to avoid the effect of the contracts for want of consideration, etc., but regardless of this issue the execution of the contracts is undisputed and we thought, and yet think, that it appears by both pleading and evidence that the facts bring this case within the operation of the amendment to the Interstate Commerce Act, which prevents the application of all those clauses of the shipping contracts in question limiting appellant's liability. We hence applied, and think we should continue to apply, that Act as the most ready way of disposing of many of the assignments of error.

Since writing the original opinion, however, it has occurred to us, though not so suggested by appellant, that possibly the Act of Congress was not in force on July 3 and 4, 1906, when the shipments in question were made. This question arises by reason of a joint resolution of Congress passed on June 30, 1906, of the tenor following:

"That the Act entitled 'An Act to amend an Act entitled 'An Act to regulate commerce,' approved February fourth, eighteen hundred and eighty-seven, and all Acts amendatory thereof, and to enlarge the powers of the Interstate Commerce Commission, shall take effect and be in force sixty days after its approval by the President of the United States." Fed. Stats., Anno. Sup. 1909, page 276. This resolution was not printed in connection with the Act of June 29, 1906, in the Supplement of 1907, from which we quoted in our original opinion, and it hence escaped our attention. Section 11 of the Act of June 29, 1906, declares: "That this Act shall take effect and be in force from and after its passage," and Judge Landis in the case of U. S. v. Standard Oil Co., 148 Fed. Rep. 722, held that it was approved by the President on the day of its passage. In that case, it became necessary to determine whether the penalties of the old or of the amended Act should apply. Judge Landis said: "It is contended in behalf of the United States that the Act of June 29, 1906, did not go into effect until after these indictments were returned. The pertinency of this proposition will appear hereafter. It is urged that this postponement was effected by the adoption of the joint resolution by Congress, approved June 30, 1906. That resolution provides that the rate law 'shall take effect and be in force sixty days after its approval by the President of the United States.' Of course, the purpose of this resolution is obvious. But it was wholly ineffective until approved by the President. This occurred on June 30th. And by its own terms

the Act became effective upon its approval by the President one day before. Plainly, therefore, on June 30th the resolution was powerless to postpone that which had already occurred on June 29th." So far as we are advised, this decision has not on this point been overruled, and on the authority thereof the publishers of 9th Current Law, page 471, say: "The rate law of June 29, 1906, became effective on the date of its approval." A contrary ruling, however, seems to have been made by the Interstate Commerce Commission in the case of Nicola, Stone & Meyers Co. v. Louisville & N. R. R. Co., 14 I. C. C. Rep. 199, but this latter authority is not available to us and we therefore do not know the basis of the ruling. As we understand, a legislative body may repeal or amend any of its Acts at will, but we know of no authority, certainly of no familiar rule, for otherwise affecting an Act once put in force and effect. In Wolfe et al. v. McCorrill, 76 Va. 876, it was held that the Legislature was without power by a joint resolution to recall for further consideration a bill theretofore duly enacted. See also the cases of People v. Devlin, 33 N. Y. 277; Harpending v. Haight, 39 Cal. 189, and People v. Hatch, 19 Ill., 283, cited in the Virginia case. Suffice it to say, that without time for further consideration and as at present advised on the present state of authority, we hold that on original hearing we correctly applied said Act of June 29, 1906.

The motion for rehearing is accordingly overruled.

*Affirmed.*

Writ of error granted. Reversed and remanded.