## SOUTHERN PAC. CO. v. W. T. MEADORS & CO. (No. 8139.)

(Court of Civil Appeals of Texas. Ft. Worth. April 3, 1915. Rehearing Denied May 1, 1915.)

1. CARRIERS ⟨☞⟩228—INJURIES TO LIVE STOCK —EVIDENCE—DELAY—ROUGH HANDLING.

Where there was some evidence of unnecessary delay in the transportation of horses and of rough handling, and abundant evidence that the horses were in poor condition on arrival, the jury were authorized to attribute such condition either to the delay or to the rough handling, and the shipper could recover the damages in either event.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 957–960; Dec. Dig. ⟨☞⟩228.]

2. CARRIERS ⟨☞⟩228 — CARRIAGE OF LIVE STOCK—ACTIONS FOR INJURIES—BURDEN OF PROOF.

In an action for injuries to a shipment of horses, where plaintiff did not accompany the shipment, nor did any one for him, who was authorized to do more than to try to keep the horses up, the burden is on the carrier to explain the cause of the injuries received by the horses.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 957–960; Dec. Dig. ⟨☞⟩228.]

3. APPEAL AND ERROR ⟨☞⟩231—PRESENTING QUESTIONS IN LOWER COURT—OBJECTIONS GOOD IN PART.

In an action for injuries to two different shipments of horses, objections which refer to both shipments, but which are good only as to one of them, will be overruled.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1299, 1352; Dec. Dig. ⟨☞⟩231.]

4. PRINCIPAL AND AGENT ⟨☞⟩124—CARRIAGE OF LIVE STOCK—LIMITING LIABILITY—CONTRACT—AUTHORITY OF SHIPPER'S AGENT.

One who was authorized by the owner of horses to accompany them during a shipment, to see that none of them got down, is not authorized, as a matter of law, to execute a contract of shipment limiting the carrier's liability.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 724; Dec. Dig. ⟨☞⟩124.]

5. CARRIERS ⟨☞⟩230 — CARRIAGE OF LIVE STOCK—CONTRACT LIMITING LIABILITY—VALIDITY.

Where the evidence showed that the contract limiting the liability of the carrier for the shipment of horses was executed by the shipper as soon as they arrived at a junction point and immediately before they started on, and the shipper had not time to read the contract and did not know of the contents, and there was no evidence of a reduced rate or other consideration for the limited liability, it was proper to submit to the jury the question whether the contracts were valid.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 961, 962; Dec. Dig. ⟨☞⟩230.]

6. CARRIERS ⟨☞⟩228 — CARRIAGE OF LIVE STOCK—INJURIES—PROOF OF MANNER AND PLACE.

Where it was shown that horses received severe bruises and other injuries during a shipment, and were weak and hungry on arrival at their destination, the failure of proof as to the precise place or manner in which the injuries were received does not defeat the shipper's right to recover.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 957–960; Dec. Dig. ⟨☞⟩228.]

7. TRIAL ⟨☞⟩234—CARRIAGE OF LIVE STOCK— INSTRUCTION—BURDEN OF PROOF.

In an action for such injuries, instructions that the carrier was not liable for any injury that did not result from lack of ordinary care, or that might have occurred on their lines, and that the burden was on the plaintiff to show by legal evidence his right to recover, were sufficient.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 534–538, 566; Dec. Dig. ⟨☞⟩234.]

8. APPEAL AND ERROR ⟨☞⟩1066 — HARMLESS ERROR—INSTRUCTIONS.

In an action for injuries to a shipment of horses, where there was no pleading or proof that the carrier failed to furnish proper facilities for unloading and reloading the horses, error in an instruction that it was the carrier's duty to furnish proper facilities for such purpose and to unload and reload the horses, and that the shipper might recover all damages arising from the failure of the carrier to unload and reload, as required by law, or for such damages as were occasioned while they were being unloaded and reloaded, arising from the carrier's negligence, which was given in connection with an instruction that the horses must be unloaded, fed, watered, and rested every 28 hours, and the carrier was not liable for delay occasioned thereby, is not prejudicial, since the reference to the facilities for unloading and reloading was evidently only introductory.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4220; Dec. Dig. ⟨☞⟩1066.]

Appeal from District Court, Mitchell County; W. W. Beall, Judge.

Action by W. T. Meadors & Co. against the Southern Pacific Company. Judgment for the plaintiff, and defendant appeals. Affirmed.

---

⟨☞⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Ed. W. Smith, of San Antonio, Douthit & Smith, of Sweetwater, and Baker, Botts, Parker & Garwood, of Houston, for appellant. Ed. J. Hamner, of Sweetwater, for appellee.

CONNER, C. J. This case has been before appellate courts of our state on two prior occasions, once before this court (129 S. W. 170), and later on writ of error before the Supreme Court (104 Tex. 469, 140 S. W. 427). It will therefore. be sufficient, we think, to now state but briefly such matters as are deemed necessary in disposing of the present appeal. To that end it may be said that the suit is one to recover damages to five car loads of horses shipped from Globe, Ariz., and seven car loads shipped from Geronimo, Ariz., to points in Texas. Globe and Geronimo are points on the Gila Valley, Globe & Northern Railway, which connected with the line of appellant's railway at Bowie, Ariz., where the horses were received by appellant, and from thence transported to its connecting carrier a few miles from El Paso, Tex. W. T. Meadors accompanied the shipment from Globe as far as Geronimo, where he stopped over to ship the horses going from that point. The Globe shipment, however, proceeded unattended, save that Meadors requested another shipper on the same train, a Mr. Nail, to look after the horses and keep them up. Meadors on a later day went through with the Geronimo shipment. Both shipments went through from the initial points without change of cars. On arrival at Bowie, written contracts were executed by Nail and others covering the horses from Globe, and by Mr. Meadors covering the Geronimo horses. The terms of these contracts and the circumstances under which they were executed, so far as material, will be later indicated.

The plaintiffs alleged negligent delays and want of due care on appellant's part during the transportation of the horses on appellant's line and consequent damages in the sum of $1,900. The defendant pleaded the general denial and specially certain provisions of the written shipping contracts above mentioned, limiting its liability. To this special plea the plaintiffs replied that the contracts relating to the Globe horses executed by Nail and others were wholly unauthorized by plaintiffs, and that the other contracts were without consideration in that they were signed for passes merely without time or opportunity to learn their contents, of which they were ignorant, etc. A trial upon the issues so outlined resulted in a verdict and judgment for the plaintiffs in the sum of $1,-500, with interest from July 10, 1906, amounting in all to $2,210, and the defendant has appealed.

[1] In various forms it is insisted that there is no evidence of delays and rough treatment, as alleged. While the evidence in support of these allegations is not replete in specific instances of unnecessary delays or rough handling, yet the evidence, as a whole, we think, sufficiently establishes the material allegations of the plaintiffs' petition in these respects. There is evidence tending to show unexplained delay between Bowie and El Paso as to one of the train loads of horses, at least. There is also evidence that, we think, authorizes an inference, at least, of rough handling in unloading some of the horses at Lordsberg, an intermediate station, and the evidence is abundant to show that the horses were delivered to appellant at Bowie in good condition, and that upon arrival at El Paso they were in a very bad condition. Many were found to be, if the evidence is to be credited, badly skinned and bruised, and some 25 or 30 of them either dead upon arrival at El Paso or which died soon thereafter. Others arrived in El Paso with their manes and tails "chewed off," as expressed by one of the witnesses, occasioned, as he explained, by extreme hunger arising from long confinement on the cars. A witness shown to be a shipper of long standing testified that injuries so found were not the result of an ordinary transportation. So that the jury evidently attributed, as we think the evidence authorized them to do, the condition of the horses on arrival at El Paso to negligent delays and unnecessary rough handling, but whether the one or the other, or both, is wholly immaterial to the plaintiffs' right of recovery.

[2] In this connection appellant insists that the burden was upon the plaintiff to show instances of the negligence charged, and that they were the proximate cause of the injuries shown, inasmuch as he accompanied the shipments. But, if it be assumed that the evidence referred to is insufficient to discharge this burden, nevertheless we think the contention applies to but one of the train loads. For, as stated, the shipment from Globe, Ariz., proceeded from Bowie without the plaintiffs' attention, and without the attendance of any one authorized to do more than to try to keep the horses up if they got down in the cars. As to this train load, therefore, at least, the burden rested upon the defendant to explain the injuries shown, and as to which the specific objections urged would hence not apply.

[3] The objections, however, go to the whole, and, not being good as to the whole, should, in any event, be overruled. We accordingly hold that the court did not err in refusing to give the peremptory instruction to find for appellant, or in submitting the issue of negligence and delay to the jury, or in other respects pointed out in the first four assignments of error.

[4] As stated in the beginning, appellant, among other things, pleaded that the shipments from Bowie were made upon written contracts containing limitations of its liability. As also stated, the plaintiffs replied, denying that the contracts had been executed

by them, or by their authority, and in the fifth assignment of error (and the sixth and seventh raise substantially the same question) objections are made to a paragraph of the court's charge submitting these contracts; the court charging, in substance, that, if made by the authority of the plaintiffs, then the limiting provisions should be applied by the jury. The evidence shows that, when the train load of horses from Globe arrived at Bowie, they were at once delivered to the appellant company, and very soon thereafter started on their forwarding journey. Before beginning, however, it seems that Nail, who had been requested by the plaintiffs to keep their horses up, and others accompanying Nail, executed written contracts pleaded by the defendant. But it is clear that, if these contracts were not executed under circumstances amounting to a species of coercion and unenforceable for want of consideration, there was at least no authority whatever from either of the plaintiffs to execute contracts so limiting the liability of the railway company. It cannot be maintained, under the circumstances of this case, as appellant insists, that the parties accompanying the train were authorized, as a matter of law, to make the contracts in question, and thereby bind the plaintiffs.

[5] So, too, we think the evidence abundantly supports the conclusion that the contract executed by one of the plaintiffs, covering the train load of horses shipped from Geronimo, was unenforceable. It was shown that, almost immediately upon arrival of this train load at Bowie, the shipment proceeded; the contracts being executed immediately before without any opportunity of reading the contents, and without a knowledge of the provisions relied upon, and without, so far as we recall, any evidence of a reduced rate or other consideration. So that we find no error of the court in submitting the issues relating to these contracts, as indeed may be said to be concluded by the opinion of our Supreme Court when the case was before it. See 104 Tex. 469, 140 S. W. 429. The assignments referred to are accordingly overruled.

[6] It is insisted that the court should have given a requested instruction to the effect that in the case of the shipment originating at Geronimo, if the jury were unable to determine from the evidence where them "where or in what manner the horses were injured," the verdict should be for the defendant as to that shipment. A like instruction was also requested relating to the shipment which originated at Globe. We think these charges were properly refused. This is particularly true as to the Globe shipment, which was not accompanied by any one with any authority or control on the part of the plaintiffs, nor in any case do we think it true, in view of the character of injuries shown, that a mere failure in the proof to show the precise place or the precise manner

of the injuries would have authorized a verdict for the defendant. The court's charge on the subject was fully sufficient.

[7] In the ninth paragraph the jury were specifically instructed that the defendant was not liable for any damages to the shipment in question which did not result from the want of ordinary care, nor for any damages that might have occurred to the horses on the lines of other railroads. The court further charged the jury in the fourteenth paragraph that the burden was upon the plaintiffs to show, by legal evidence, their right to recover. We accordingly overrule appellant's eighth and ninth assignments of error. The objections made to the eleventh paragraph of the court's charge, submitting the issue of the binding force of the written contract, is properly disposed of by the opinion of the Supreme Court before referred to. The tenth assignment will accordingly not be discussed.

A number of objections are also made to the following paragraph of the court's charge:

"You are instructed that it was the duty of the Southern Pacific Company to furnish suitable and proper facilities for unloading and reloading plaintiffs' horses for feed, water, and rest, if same became necessary to be done under the law as given you in charge herein, and also to unload and reload them, and the Southern Pacific Company would be responsible to plaintiffs for all damages, if any, arising from the negligence, if any, of the Southern Pacific Company in failing to unload and reload such horses, or for such damages, if any, occasioned said horses, while being unloaded and reloaded or being held in pens and while in charge of said Southern Pacific Company and arising from the negligence, if any, of said Southern Pacific Company."

[8] It is first insisted that there was neither pleading nor evidence of any failure on the part of defendant to furnish suitable and proper facilities for unloading and reloading plaintiffs' horses. This seems to be true, but it will be observed that the charge can hardly be said to authorize a recovery on such ground. The reference in the charge to suitable and proper facilities for unloading and reloading is but introductory to that which follows, and we fail to see how it can be prejudicial. There was evidence raising an inference of negligence on the part of the company in unloading one of the train loads of horses at Lordsberg, the intermediate station before referred to, and it is evident that the charge was directed to this phase of the testimony. In the preceding paragraph of the court's charge, evidently in the interest of defendant, and doubtless in answer to special instructions of like effect requested in behalf of the defendant, the court instructed the jury that, under the law, the horses could not be held on the cars for a longer period than 28 consecutive hours, without being unloaded and rested, fed, and watered, and that, if the circumstances required such unloading and reloading for the purposes of feed, water, and rest, then the delay so occasioned should not be charged against de-

fendant. Construing the charges together, which relate to the same subject, we think it altogether improbable that the jury were misled to defendant's prejudice by the court's reference to the company's duties to furnish the proper facilities. The objection that the charge was erroneous for the reason that the written contracts relieved the defendant from liability for damages occasioned by the unloading and reloading is fully answered by the verdict of the jury, to the effect that the written contracts were unenforceable. And this last observation applies as well to the alleged error of the court in refusing a special instruction, to the effect that the written contracts limited the defendant's liability for horses killed to the sum of $5 per head, and also to the objection that the verdict is excessive because of such limitation. Moreover, the subject-matter of the special instruction was sufficiently comprehended in the court's charge, for in paragraphs 12½ and 12¾ the jury were instructed that if, under the circumstances submitted in the paragraphs mentioned, the contracts were found to be authorized, then the defendant's liability must be limited, as stated in the special instruction.

We find no further assignment that we think requires discussion. All assignments are accordingly overruled, and the judgment affirmed.